LATHAM & WATKINS LLP
Melanie M. Blunschi (CA Bar No. 234264)
*melanie.blunschi@lw.com*
Morgan E. Whitworth (CA Bar No. 304907)
*morgan.whitworth@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*[Additional Counsel on Signature Page]*

*Attorneys for Nominal Defendant Live Nation Entertainment, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| MARK STEVEN ZWICK, Derivatively on Behalf of Nominal Defendant LIVE NATION ENTERTAINMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL RAPINO, GREGORY B. MAFFEI, MAVERICK CARTER, PING FU, JEFFREY T. HINSON, CHAD HOLLINGSWORTH, JIMMY IOVINE, JAMES S. KAHAN, RANDALL T. MAYS, LATRIECE WATKINS, RICH PAUL, and DANA WALDEN,<br><br>Defendants,<br><br>and<br><br>LIVE NATION ENTERTAINMENT, INC.,<br><br>Nominal Defendant. | Case No. 2:23-cv-09520-KK-AS<br><br>**NOMINAL DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Kenly Kiya Kato<br>Date: October 8, 2026<br>Time: 9:30 a.m.<br>Place: Courtroom 3<br><br>*[Declaration in Support; Proposed Order concurrently filed herewith]* |

**NOTICE OF MOTION AND MOTION TO STAY**

PLEASE TAKE NOTICE that on October 8, 2026 at 9:30 a.m., or as soon thereafter as the parties may be heard, before the Honorable Kenly Kiya Kato, District Judge, United States District Court for the Central District of California, in the George E. Brown, Jr. United States Courthouse, 3470 12th Street, 3rd Floor, Courtroom 3, Riverside, CA 92501, Nominal Defendant Live Nation Entertainment, Inc. ("Live Nation") will move this Court for an order staying this action and three related actions during the pendency of a related shareholder derivative action currently pending in the Court of Chancery of the State of Delaware before the Honorable Chancellor Kathaleen St. J. McCormick, *Schreiber v. Rapino, et al.*, No. 2024-0863-KSJM (Del. Ch.).

Pursuant to Local Rule 7-3, the parties thoroughly discussed the substance and potential resolution of the filed motion by videoconference on August 27, 2026. This motion is based on this Notice of Motion and Motion to Stay, the following Memorandum of Points and Authorities, the Declaration of Melanie M. Blunschi and the exhibits thereto, all pleadings and papers in this action, and any oral argument of counsel.

Dated: September 4, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By <u>/s/ *Melanie M. Blunschi*</u>

Melanie Blunschi (CA Bar No. 234264)
Morgan E. Whitworth (CA Bar No. 304907)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
*melanie.blunschi@lw.com*
*morgan.whitworth@lw.com*

Jason C. Hegt (*pro hac vice forthcoming)*
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
*jason.hegt@lw.com*

Jordan D. Cook (CA Bar No. 293394)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: +1.714.540.1235
Facsimile: +1.714.755.8290
*jordan.cook@lw.com*

*Attorneys for Nominal Defendant Live Nation Entertainment, Inc.*

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 10

II. BACKGROUND .......... 12

A. A Securities Class Action Is Filed Challenging Statements About Live Nation's Compliance with Antitrust Laws and Cooperation with Regulatory Investigations .......... 12

B. Five Shareholder Derivative Suits Follow Asserting Claims Based on the Same Allegations as the Securities Class Action .......... 13

C. Live Nation's Bylaws Require Derivative Suits to be Filed In the Delaware Court of Chancery .......... 15

III. LEGAL STANDARD .......... 15

IV. ARGUMENT .......... 17

A. Under *Colorado River,* the Court Should Stay the California Derivative Actions Pending Resolution of the Parallel *Schreiber* Action .......... 17

1. Factor 1: No Property Is at Stake in These Actions .......... 18

2. Factor 2: Convenience of the Federal Forum Is Neutral .......... 18

3. Factor 3: A Stay Avoids Piecemeal Litigation .......... 18

4. Factor 4: The Order in Which Jurisdiction Was First Obtained Is Neutral .......... 20

5. Factor 5: Delaware Law Provides the Rule of Decision .......... 21

6. Factor 6: The *Schreiber* Court Will Be Able to Protect Plaintiffs' Federal Rights .......... 22

7. Factor 7: Exercising Jurisdiction over the California Derivative Actions Would Promote Forum Shopping ........ 22

8. Factor 8: Proceedings in the *Schreiber* Action Will Resolve All Issues in the California Derivative Actions ........ 23

B. In the Alternative, the Court Should Exercise Its Inherent Power and Stay the California Derivative Actions Pending Resolution of the Parallel *Schreiber* Action ........ 24

1. A Stay Is Necessary to Prevent Harm to Live Nation ........ 25

2. Judicial Economy Mandates a Stay ........ 26

3. There Is No "Possible Damage" From a Stay ........ 27

V. CONCLUSION ........ 28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253 (9th Cir. 1988) .......... 16, 18, 20

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) .......... 11

*Ash v. Alexander*, 2000 WL 20704 (S.D.N.Y. Jan. 12, 2000) .......... 18

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013) .......... 11

*Bao v. Page*, 2020 WL 1671556 (N.D. Cal. Feb. 5, 2020) .......... 25, 26, 27

*Breault v. Folino*, 2002 WL 31974381 (C.D. Cal. Mar. 15, 2002) .......... 25

*Bushansky v. Armacost*, 2012 WL 3276937 (N.D. Cal. Aug. 9, 2012) .......... 18, 21

*City of Hollywood Firefighters' Pension Sys. v. Wells Fargo & Co.*, 2024 WL 2868149 (N.D. Cal. June 5, 2024) .......... 23

*Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004) .......... 21

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) .......... 17, 25

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) .......... 11, 16

*Donley v. Live Nation Entertainment, Inc.*, No. 2:23-cv-06343-KK-AS (C.D. Cal. Aug. 4, 2023) .......... 12

*Emory on behalf of Wal-Mart Stores, Inc. v. Duke*, 2013 WL 12284455 (W.D. Ark. Mar. 19, 2013) .......... 17

*Holder v. Holder*,
305 F.3d 854 (9th Cir. 2002), *abrogated on other grounds by*, *United States v. State Water Res. Control Bd.*, 988 F.3d 1194 (9th Cir. 2021) ........ 16

*In re Countrywide Financial Corp. Derivative Litig.*,
542 F. Supp. 2d 1160 (C.D. Cal. 2008) ........ 16

*In re CytRx Corp. S'holder Derivative Litig.*,
2015 WL 12745084 (C.D. Cal. Jan. 8, 2015) ........ *passim*

*In re RH S'holder Deriv. Litig.*,
2019 WL 580668 (N.D. Cal. Jan. 23, 2019) ........ 25, 26

*In re Transunion Deriv. S'holder Litig.*,
324 A.3d 869 (Del. Ch. 2024) ........ 27

*In re Verisign, Inc., Derivative Litig.*,
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ........ 21

*Iron Workers Local No. 55 Pension Fund v. Rapino*,
No. 2:25-cv-05538-KK-AS (C.D. Cal. June 18, 2025) ........ 15

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991) ........ 22

*Klein v. Cook*,
2015 WL 2454056 (N.D. Cal. May 22, 2015) ........ 26, 27

*Landis v. North American Co.*,
299 U.S. 248 (1936) ........ 11, 17, 25

*Lee v. Fisher*,
2021 WL 1659842 (N.D. Cal. Apr. 27, 2021), *aff'd*, 70 F.4th 1129 (9th Cir. 2023) ........ 22

*Lloyd v. Carney*,
2011 WL 11799981 (D.N.J. Aug. 5, 2011) ........ 26

*McCreary v. Celera Corp.*,
2011 WL 1399263 (N.D. Cal. Apr. 13, 2011) ........ *passim*

*Meland v. Weber*,
2 F.4th 838 (9th Cir. 2021) ........ 22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 16, 21

*Nakash v. Marciano*,
882 F.2d 1411 (9th Cir. 1989) .......... 16, 18, 23

*R.R. St. & Co. v. Transp. Ins. Co.*,
656 F.3d 966 (9th Cir. 2011) .......... 16, 18

*Rosenblum v. Sharer*,
2008 WL 9396534 (C.D. Cal. July 28, 2008) .......... 26

*Sabbag v. Cinnamon*,
2010 WL 8470477 (N.D. Cal. Dec. 10, 2010) .......... 26, 27

*Schreiber v. Rapino*,
No. 2024-0863-KSJM (Del. Ch.) .......... 10, 14

*Sea Prestigio, LLC v. M/Y Triton*,
787 F. Supp. 2d 1116 (S.D. Cal. 2011) .......... 16

*Seneca Ins. Co. v. Strange Land, Inc.*,
862 F.3d 835 (9th Cir. 2017) .......... 22

*South v. Baker*,
62 A.3d 1 (Del. Ch. 2012) .......... 28

*The Public School Teachers' Pension & Retirement Fund of Chicago v. Rapino*,
No. 2:25-cv-05264-KK-AS (C.D. Cal. June 10, 2025) .......... 14

*Travelers Indem. Co. v. Madonna*,
914 F.2d 1364 (9th Cir. 1990) .......... 18, 23

*United States v. Live Nation Entertainment, Inc.*,
No. 1:24-cv-03973-AS (S.D.N.Y. May 23, 2024) .......... 13

*Weiss v. Doyle*,
178 F. Supp. 566 (S.D.N.Y. 1959) .......... 26, 27

*Williams v. Carter*,
No. 2:24-cv-05225-KK-AS (C.D. Cal. June 21, 2024) .......... 14

*Zwick v. Rapino*,
No. 2:23-cv-09520-KK-AS (C.D. Cal. Nov. 10, 2023), ECF No. 1 .......... 13

**RULES**

FED. R. CIV. P. 23.1 .......... 13

## MEMORANDUM OF POINTS AND AUTHORITIES

Nominal Defendant Live Nation Entertainment, Inc. ("Live Nation" or the "Company") respectfully requests that the Court stay this shareholder derivative litigation pending resolution of a substantially similar derivative action that was filed in the Delaware Court of Chancery, *Schreiber v. Rapino,* No. 2024-0863-KSJM (Del. Ch.) (the "*Schreiber* Action").

## I. INTRODUCTION

Six different plaintiffs filed five separate (but nearly identical) lawsuits in two different courts on opposite ends of the country. In each of those lawsuits, shareholders of Live Nation purport to be bringing claims derivatively on behalf of the Company against certain of its directors and officers. All five lawsuits concern the same public disclosures and alleged anticompetitive conduct. All five lawsuits bring a core overlapping set of fiduciary duty and other claims against nearly identical lists of defendants. And all five lawsuits fail for the same threshold reason that they fail to show that these individual stockholders have the right to pursue claims on behalf of the Company. There is no good reason for these derivative cases to be litigated in parallel before different courts. Doing so serves only to waste judicial bandwidth and party resources, and it creates the potential for conflicting decisions on the same topic.

Four of the shareholder derivative cases are pending before this Court, and one is pending in the Delaware Court of Chancery. The Delaware Court of Chancery is the proper forum for these claims because Live Nation is a Delaware corporation, these claims are governed by Delaware law, and Live Nation's bylaws include a provision selecting that court as the "sole and exclusive forum for . . . any derivat[ive] action or proceeding brought on behalf of the corporation" and "any action asserting a claim of breach of a fiduciary duty." Courts in this District and around the country routinely enforce forum selection clauses like this because they enable companies to have all intra-corporate disputes litigated in a single court. Ex.

1 (Sixth Amended and Restated Bylaws of Live Nation Entertainment, Inc.) §6.10.

If these cases were not stayed, the four derivative suits pending before this Court (the "California Derivative Actions") would be subject to dismissal under *forum non conveniens* because they were filed in violation of Live Nation's forum selection provision. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 61-63 (2013) (holding that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*" and that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.") (alterations in original). And all five derivative cases (including the Delaware case) should be dismissed for a host of other reasons. This raft of duplicative lawsuits underscores why it has been a "cardinal precept" for more than half a century that absent rare circumstances not present here, a company's "directors, rather than its stockholders, manage the business and affairs of the corporation," including determining whether to initiate litigation. *See Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984). In any event, rather than litigate these overlapping issues in parallel and then potentially through parallel appeals, Live Nation respectfully requests that the Court stay the four cases filed in this District in favor of the one case filed in the proper forum.

The Court has the authority to stay the California Derivative Actions pursuant to the abstention principles articulated by the Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817 (1976), or in the alternative, pursuant to its inherent powers to control its docket, as set forth by the Supreme Court in *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). As detailed below, a stay is appropriate under either *Colorado River* or *Landis* because: (i) a stay would avoid piecemeal litigation and the potential of conflicting results, (ii) the actions are sufficiently parallel such that adjudication of the Delaware case will resolve all key issues in the California Derivative Actions, (iii) Delaware law provides the rule of decision for the claims, (iv) allowing the cases in this District to

proceed would promote forum shopping, and (v) no harm would result from the stay because nearly identical claims will remain pending in Delaware.

Accordingly, Live Nation respectfully requests that the Court stay the California Derivative Actions pending resolution of the *Schreiber* Action.[1]

## II. BACKGROUND

### A. A Securities Class Action Is Filed Challenging Statements About Live Nation's Compliance with Antitrust Laws and Cooperation with Regulatory Investigations

On August 4, 2023, Plaintiff Brian Donley filed a putative class action against Live Nation and two of its directors and officers, Michael Rapino (President, CEO, and Director), and Joe Berchtold (President and CFO), challenging statements in various public disclosures regarding Live Nation's compliance with antitrust laws, its cooperation with governmental investigations, and the regulatory risks it faced. *See Donley v. Live Nation Entertainment, Inc.,* No. 2:23-cv-06343-KK-AS (C.D. Cal. Aug. 4, 2023) (the "Securities Class Action"), ECF No. 1. On November 27, 2024, the parties reached an agreement to resolve the Securities Class Action for $20 million. *Id.,* ECF No. 89-1 at 4. As noted by the lead plaintiffs in that case, this payment represented approximately 2.69 percent of the $743 million that lead plaintiffs believed they could have recovered if they had prevailed, and it reflects the odds that Live Nation would have prevailed on a range of defenses. *Id.*; ECF No. 88-1 at 1-2, 19 (explaining that plaintiffs "faced significant obstacles if litigation

---

[1] Defendants understand that the plaintiffs in the California Derivative Actions are currently discussing the possibility of consolidating those four cases into a single action, which will presumably be the above-captioned action because it bears the lowest docket number. In anticipation of the cases being consolidated, Defendants have filed this motion only in the above-captioned action. However, should the parties in the California Derivative Actions be unable to agree on consolidation, Defendants will file substantively identical motions in the other three California Derivative Actions. Finally, although the plaintiffs in all four California Derivative Actions have agreed to stay the deadline for Defendants to respond to any complaint until the cases are consolidated and an operative complaint is filed, none of the plaintiffs have agreed to stay these matters until final resolution of the *Schreiber* Action.

were to continue, including class certification, difficulties in proving loss causation and damages, [and] overcoming Defendants' potential defenses"). On August 28, 2025, this Court granted final approval of this settlement. *Id.,* ECF No. 103.

**B. Five Shareholder Derivative Suits Follow Asserting Claims Based on the Same Allegations as the Securities Class Action**

In a derivative suit, a shareholder purports to bring claims on behalf of the company in which it is invested. *See generally* FED. R. CIV. P. 23.1. Five such suits were filed on behalf of Live Nation: four in this District (the "California Derivative Actions") and one in the Delaware Court of Chancery (the "*Schreiber* Action").[2]

**Suit 1 – Zwick:** On November 10, 2023, Plaintiff Mark Steven Zwick filed the first derivative action based on the same allegations as the Securities Class Action complaint—*i.e.*, that Live Nation failed to disclose its alleged non-compliance with certain antitrust laws and the alleged likelihood that regulators would bring claims on this topic. *Zwick v. Rapino,* No. 2:23-cv-09520-KK-AS (C.D. Cal. Nov. 10, 2023), ECF No. 1 ("*Zwick*"), *e.g.,* ¶¶ 10-11, 52-69, 100-03. Based on these allegations, the *Zwick* Complaint asserted six causes of action against certain of Live Nation's directors and officers for: (i) breach of fiduciary duties, (ii) aiding and abetting breaches of fiduciary duties, (iii) abuse of control, (iv) gross

[2] On May 23, 2024, the United States Department of Justice ("DOJ") and several state entities filed a lawsuit against Live Nation and Ticketmaster L.L.C. ("Ticketmaster") alleging, among other things, that Live Nation and Ticketmaster did not comply with various antitrust laws. *See United States v. Live Nation Entertainment, Inc.,* No. 1:24-cv-03973-AS (S.D.N.Y. May 23, 2024), ECF No. 4. The Securities Class Action and all five derivative actions alleged that Live Nation did not adequately disclose the risk that this lawsuit would be filed. On March 5, 2026, Live Nation and the DOJ entered into a settlement to resolve the DOJ's claims. *Id.,* ECF No. 1171-1. Various state attorneys general were not party to that settlement. A trial of the state attorneys general claims was thereafter conducted, resulting in a verdict in the plaintiffs' favor dated April 15, 2026. *Id.,* ECF No. 1417. Certain posttrial motions and remedies proceedings remain pending, including Live Nation's Rule 50(b) motion for judgment as a matter of law on all claims, *id.,* ECF No. 1500, and Live Nation's Rule 59 motion for a new trial, *id.,* ECF No. 1502.

mismanagement, (v) unjust enrichment, and (vi) violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). *Id.* ¶¶ 90-119.

**Suit 2 – Williams:** On June 21, 2024, Plaintiff John Williams filed a similar shareholder derivative action in this District based largely on the same allegations as in *Zwick* and the Securities Class Action. *Williams v. Carter,* No. 2:24-cv-05225-KK-AS (C.D. Cal. June 21, 2024), ECF No. 1 ("*Williams*"), *e.g.,* ¶¶ 5-6, 9-14, 93-126. Based on these allegations, the *Williams* Complaint asserted five causes of action against certain of Live Nation's officers and directors for: (i) breach of fiduciary duties, (ii) aiding and abetting breach of fiduciary duties, (iii) abuse of control, (iv) unjust enrichment, and (v) violation of Section 14(a) of the Exchange Act. *Id.* ¶¶ 211-39.

**Suit 3 – Schreiber:** On August 16, 2024, Plaintiffs Steven Schreiber and Milton Pfeiffer filed a shareholder derivative action in the Delaware Court of Chancery that tracked allegations from the Securities Class Action and previously pending derivative actions, and asserted claims against certain of Live Nation's officers and directors for: (i) breach of fiduciary duties and (ii) unjust enrichment. *Schreiber v. Rapino,* No. 2024-0863-KSJM (Del. Ch. Aug. 16, 2024) ("*Schreiber*").

**Suit 4 – CTPF:** On June 10, 2025, the Public School Teachers' Pension & Retirement Fund of Chicago filed a shareholder derivative action in this Court that tracked allegations from the Securities Class Action and previously pending derivative actions. *The Public School Teachers' Pension & Retirement Fund of Chicago v. Rapino,* No. 2:25-cv-05264-KK-AS (C.D. Cal. June 10, 2025), ECF No. 1 (*"CTPF"*), *e.g.,* ¶¶ 3-10, 102-19, 261-74. Based on these allegations, the *CTPF* Complaint asserted four causes of action against certain of Live Nation's officers and directors for alleged breaches of fiduciary duties and violation of Section 14(a) of the Exchange Act. *Id.* ¶¶ 337-65.

**Suit 5 – Iron Workers:** On June 18, 2025, Plaintiff Iron Workers Local No. 55 Pension Fund filed a nearly-identical shareholder derivative action in this District.

*Iron Workers Local No. 55 Pension Fund v. Rapino,* No. 2:25-cv-05538-KK-AS (C.D. Cal. June 18, 2025) ("*Iron Workers*"), *e.g.*, ¶¶ 3-10, 102-19, 261-74. Based on these allegations, the *Iron Workers* Complaint asserted four causes of action against certain of Live Nation's officers and directors for alleged breaches of fiduciary duties and violation of Section 14(a) of the Exchange Act. *Id.* ¶¶ 337-65.

There has been no substantive activity in any of the five shareholder derivative cases, all of which are presently stayed. *Schreiber* Action, December 18, 2024 Order; *Zwick* Action, ECF No. 26 at 2; *Williams* Action, ECF No. 34 at 2; *CTPF* Action, ECF No. 32 at 2; *Iron Workers*, ECF No. 35 at 2.

### C. Live Nation's Bylaws Require Derivative Suits to be Filed In the Delaware Court of Chancery

Live Nation is a corporation that is "incorporated under the laws of the State of Delaware." *See* Ex. 1 Live Nation's Bylaws expressly provide that:

> Unless the corporation consents in writing to the selection of an alternative forum, (a) **the Court of Chancery of the State of Delaware shall be the sole and exclusive forum** for (i) any derivat[ive] action or proceeding brought on behalf of the corporation, [and] (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the corporation to the corporation or the corporation's stockholder."

*Id.,* Section 6.10 (emphasis added). Because Live Nation believes it is wasteful and illogical to litigate overlapping claims in two different courts, the Company has not consented to litigate any of the pending derivative actions in this District.

## III. LEGAL STANDARD

Under the *Colorado River* doctrine, courts may stay a federal proceeding pending the results of a concurrent state court proceeding if doing so would further "wise judicial administration."[3] *Colorado River,* 424 U.S. at 818. In determining

---

[3] Although it is often said that federal courts have a "virtually unflagging obligation" to exercise jurisdiction, "the Ninth Circuit has commented that this statement

whether a stay meets these criteria, courts consider concerns of duplicative litigation, inconsistent results, and conservation of judicial resources. *Id*. at 817-19.

The Ninth Circuit has identified eight non-exclusive factors to guide the determination of whether to stay a parallel case under *Colorado River*: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). To that end, "one factor may be accorded substantially more weight than another depending on the circumstances of the case." *In re Countrywide Financial Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1172 (C.D. Cal. 2008) (quoting *Holder v. Holder*, 305 F.3d 854, 870-71 (9th Cir. 2002), *abrogated on other grounds by*, *United States v. State Water Res. Control Bd.*, 988 F.3d 1194 (9th Cir. 2021)). In fact, "[s]ome factors may not apply in some cases," and in others, "a single factor may decide whether a stay is permissible." *See State Water Res. Control Bd.*, 988 F.3d at 1203 (citation omitted).

In addition, the Court also has "the power to stay proceedings" pursuant to "the power inherent in every court to control the disposition of the causes on its

---

'somewhat overstates the law because in certain circumstances, a federal court may stay its proceedings in deference to pending state proceedings.'" *Sea Prestigio, LLC v. M/Y Triton*, 787 F. Supp. 2d 1116, 1118 (S.D. Cal. 2011) (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989)).

docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. In deciding whether to stay an action under *Landis*, courts weigh three factors: (1) "the hardship or inequity which a party may suffer in being required to go forward"; (2) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay"; and (3) "the possible damage which may result from the granting of a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Here, a stay is warranted under both *Colorado River* and *Landis*.

## IV. ARGUMENT

### A. Under *Colorado River,* the Court Should Stay the California Derivative Actions Pending Resolution of the Parallel *Schreiber* Action

The *Colorado River* factors strongly weigh in favor of staying the California Derivative Actions in deference to the parallel *Schreiber* Action currently pending in the Delaware Court of Chancery, which is the only proper forum for derivative claims being brought on behalf of Live Nation.

Federal district courts routinely exercise their discretion under *Colorado River* to stay actions that are parallel to actions pending in the Delaware Court of Chancery, including, as relevant here, shareholder derivative actions. *See In re CytRx Corp. S'holder Derivative Litig.*, 2015 WL 12745084, at *5-6 (C.D. Cal. Jan. 8, 2015) (staying federal derivative suit in deference to parallel derivative suit pending in the Delaware Court of Chancery without regard to forum-selection clause); *Emory on behalf of Wal-Mart Stores, Inc. v. Duke*, 2013 WL 12284455, at *6 (W.D. Ark. Mar. 19, 2013) (same); *see also McCreary v. Celera Corp.,* 2011 WL 1399263, at *5 (N.D. Cal. Apr. 13, 2011) (staying shareholder class action pending resolution of a parallel action in the Delaware Court of Chancery). Indeed, "derivative lawsuits present the kind of exceptional circumstances" that warrant a *Colorado River* stay because of a "special concern about piecemeal litigation." *See CytRx*, 2015 WL

12745084, at *5 (citation omitted). In other words, because derivative suits involve different shareholders pursuing the same (or similar) claims on behalf of a corporation, multiple and "[p]iecemeal proceedings in derivative suits waste the resources of the real party of interest and 'create a serious risk of conflicting results that could impact thousands of shareholders.'" *Id.*; *see also Ash v. Alexander,* 2000 WL 20704, at *3 (S.D.N.Y. Jan. 12, 2000) (staying case because with "overlapping claims . . . [c]ontinuation of both suits . . . risks inconsistent findings with respect to the real party in interest in both actions").

1. **Factor 1: No Property Is at Stake in These Actions**

The first factor—*i.e.*, which court assumed jurisdiction of any property at stake—is not applicable to the California Derivative Actions and may be disregarded. *See R.R. Street*, 656 F.3d at 979; *Nakash*, 882 F.2d at 1415 n.6.

2. **Factor 2: Convenience of the Federal Forum Is Neutral**

Although the Company is headquartered in California (such that some witnesses reside here), "witnesses and evidence will need to be produced in Delaware [in the *Schreiber* Action] regardless of whether the instant action[s] proceed[]," and duplicating those efforts in this Court renders this forum partially inconvenient. *See Bushansky v. Armacost*, 2012 WL 3276937, at *3-4 (N.D. Cal. Aug. 9, 2012). On balance, this factor is neutral.

3. **Factor 3: A Stay Avoids Piecemeal Litigation**

The desire to avoid piecemeal litigation strongly weighs in favor of staying the California Derivative Actions. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (citation omitted); *see also Am. Int'l Underwriters*, 843 F.2d at 1258, 1261 (affirming *Colorado River* dismissal, in part to avoid piecemeal litigation).

As detailed below, the California Derivative Actions are substantially similar to the *Schreiber* Action:

- **All plaintiffs seek to bring the same core causes of action on behalf of Live Nation, on substantially the same grounds**, including:
    - (i) **breach of fiduciary duty claims** based on acts or omissions related to (i) Live Nation's purported engagement in anticompetitive conduct in connection with its concert promotion and ticketing services and (ii) stock trading by certain officers, *compare CTPF* Complaint ¶¶ 347-49, 354-58, 362-65 *with Schreiber* Complaint ¶¶ 256-64; *see also Iron Workers* Complaint ¶¶ 347-49, 354-58, 362-65; *Williams* Complaint ¶¶ 215-16; *Zwick* Complaint ¶¶ 100-01; and
    - (ii) **unjust enrichment claims or requests for relief** premised on the fact that defendants received compensation from the Company and sold the Company's common stock, *compare CTPF* Complaint, Prayer for Relief D, *with Schreiber* Complaint ¶¶ 273-74; *see also Iron Workers* Complaint, Prayer for Relief D; *Williams* Complaint ¶¶ 224-25; *Zwick* Complaint ¶¶ 109-10.
- **All plaintiffs seek nearly identical relief**, including (i) damages the Company allegedly incurred as a result of defendants' purported misconduct; (ii) institution of corporate governance reforms related to the Company's compliance with antitrust laws; and (iii) other equitable relief, *compare CTPF* Complaint, Prayer for Relief C-E, I, *with Schreiber* Complaint, Prayer for Relief E-G, I; *see also Iron Workers* Complaint, Prayer for Relief C-E, I; *Williams* Complaint, Prayer for Relief C-E, G; *Zwick* Complaint, Prayer for Relief A-B, E.
- **All plaintiffs claim that this is the rare case where individual shareholders—rather than the board of directors—determine whether to proceed with claims on Live Nation's behalf.** Plaintiffs all allege that they can pursue these claims because making a litigation demand on Live Nation's Board would have been futile. *Compare CTPF* Complaint ¶¶ 310-36, *with Schreiber* Complaint ¶¶ 234-51; *see also Iron Workers* Complaint ¶¶ 310-36; *Williams* Complaint ¶¶ 185, 188-89, 196-204; *Zwick* Complaint ¶¶ 76, 78, 84-85.
- **All plaintiffs rely on findings in and/or purported harm caused by the Securities Class Action in support of their claims.** *Compare CTPF* Complaint ¶¶ 15, 210, 237-38, 246-49, 262-63, *with Schreiber* Complaint ¶¶ 227-28; *see also Iron Workers* Complaint ¶¶ 210, 237-38, 246-49, 262-63; *Williams* Complaint ¶ 185. All Plaintiffs also cite

litigation of the Securities Class Action as a harm that the Company has suffered as a result of defendants' purported misconduct. *Compare CTPF* Complaint ¶ 282, *with Schreiber* Complaint ¶ 184; *see also Iron Workers* Complaint ¶ 282; *Williams* Complaint ¶ 62; *Zwick* Complaint ¶ 103.

- **All plaintiffs name substantially the same defendants,** including Michael Rapino, Gregory B. Maffei, Maverick Carter, Ping Fu, Jeffrey T. Hinson, Chad Hollingsworth, Jimmy Iovine, James S. Kahan, Randall T. Mays, Latriece Watkins, Richard A. Paul, and Dana Walden.

In light of the substantial overlap between the California Derivative Actions and the *Schreiber* Action, there is a serious risk that allowing the California Derivative Actions to proceed would create the type of piecemeal litigation that *Colorado River* sought to avoid. There is no good reason for two courts to decide the same threshold legal issues (or any other issues for that matter) in multiple suits that bring the same or similar claims on behalf of the same company against nearly identical lists of defendants. *See CytRx*, 2015 WL 12745084, at *5 (granting *Colorado River* stay in deference to parallel Delaware action where allegations were "substantially similar and proceeding simultaneously would require resolution of many overlapping dispositive issues"); *id.* ("There is no reason why we need to rule on these issues in addition to the [state] court, especially when we may end up reaching conflicting results."); *Am. Int'l Underwriters*, 843 F.2d at 1258 (holding that avoidance of piecemeal litigation favored *Colorado River* stay in deference to parallel state action).

#### 4. <u>**Factor 4: The Order in Which Jurisdiction Was First Obtained Is Neutral**</u>

The factor assessing the order in which jurisdiction was first obtained is "measured . . . in terms of how much progress has been made in the two actions." *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21. The *Zwick* and *Williams* Actions were filed months before the *Schreiber* Action was filed, but the *CTPF* and *Iron*

*Workers* Actions were filed several months after the *Schreiber* Action was filed. However, all five actions are at the same early stage with no substantive proceedings having occurred. Accordingly, this factor is neutral.

5. **Factor 5: Delaware Law Provides the Rule of Decision**

Live Nation is incorporated in the State of Delaware, Ex. 1 at 1, and "the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders." *See CytRx*, 2015 WL 12745084, at *5 (quoting *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1214 (N.D. Cal. 2007).) Accordingly, "Plaintiff['s] derivative claims against [Live Nation's] officers [and directors] are governed by Delaware law" and thus, it is "proper that the [Delaware] Chancery Court rule on these state law disputes." *See CytRx*, 2015 WL 12745084, at *5. The *Schreiber* court "unquestionably has a well-recognized expertise in the field of state corporation law," (citation omitted) including deep experience in addressing demand futility allegations and the merits of derivative breach of fiduciary duty claims, as applicable here, which means "it is better suited to rule on such issues." *Id.; see also McCreary,* 2011 WL 1399263, at *4 ("The unique expertise of the Delaware court in applying Delaware corporate law militates in favor of allowing the Delaware court to rule on those claims."). Although this Court could no doubt rule on these questions if necessary, other courts have observed that stays make sense in similar circumstances because "judges in Delaware are more familiar with Delaware state law than judges in California. Given the high likelihood that this entire case is governed by Delaware law, there is wisdom in letting Delaware judges decide these issues." *Bushansky*, 2012 WL 3276937, at *4; *see also Clark v. Lacy,* 376 F.3d 682, 688 (7th Cir. 2004) ("[A] state court's expertise in applying its own law favors a *Colorado River* stay.") (citation omitted).[4]

---

[4] Although the merits of the federal securities claims in the California Derivative Actions are governed by federal law, the threshold question of whether any shareholder has standing to bring these claims on behalf of a Delaware corporation

Accordingly, this factor strongly weighs in favor of staying the California Derivative Actions.

6. **<u>Factor 6: The *Schreiber* Court Will Be Able to Protect Plaintiffs' Federal Rights</u>**

This factor "pertains to whether there is an impediment to the state court protecting the litigants' federal rights." *See Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 845 (9th Cir. 2017). Although the California Derivative Actions include federal claims that cannot be directly adjudicated by the *Schreiber* Court, those claims are entirely duplicative of a breach of fiduciary duty claim that is pending in the *Schreiber* Action. In other words, adjudication of the parallel state law claim will necessarily protect the same rights that plaintiffs seek to advance with federal claims. Indeed, the Ninth Circuit recently rejected the argument that the existence of a federal claim means that the Delaware Court of Chancery is not an adequate forum based on the "strong federal policy in favor of enforcing forum-selection clauses" and the similarities between the relevant state and federal claims. *See Lee v. Fisher*, 2021 WL 1659842, at *3, 6 (N.D. Cal. Apr. 27, 2021) (enforcing forum selection clause that selected Delaware Court of Chancery as exclusive forum for plaintiff's claims "despite plaintiff's inability to bring Section 14(a) claim under the Exchange Act in state court"), *aff'd*, 70 F.4th 1129 (9th Cir. 2023). And in any event, "the primary relief Plaintiff seeks . . . can be awarded by the [*Schreiber*] court." *See McCreary*, 2011 WL 1399263, at *5. Accordingly, this factor either weighs in favor of a stay or is neutral.

7. **<u>Factor 7: Exercising Jurisdiction over the California Derivative Actions Would Promote Forum Shopping</u>**

"The Ninth Circuit has indicated that 'forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the

---

is a question of Delaware law. *See Meland v. Weber*, 2 F.4th 838, 848 (9th Cir. 2021) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991)).

state court or to gain a tactical advantage from the application of federal court rules.'" *See id.* at *5 (citing *Travelers*, 914 F.2d at 1369). Here, although each plaintiff in the California Derivative Actions may have their own reasons for not wanting to litigate their Delaware law claims against a Delaware company before a Delaware court, their decision to tack-on a single federal claim to the Delaware common law claims—even though all claims are based on the same facts and seek the same relief—suggests at least some element of forum shopping. *Id.*

8. **Factor 8: Proceedings in the *Schreiber* Action Will Resolve All Issues in the California Derivative Actions**

In order to assess whether the *Schreiber* Action will address all issues in the California Derivative Actions, the Court must determine if they are "sufficiently parallel." *See CytRx*, 2015 WL 12745084, at *4; *City of Hollywood Firefighters' Pension Sys. v. Wells Fargo & Co.*, 2024 WL 2868149, at *5 (N.D. Cal. June 5, 2024). Importantly, "exact parallelism . . . is not required. It is enough if the two proceedings are 'substantially similar.'" *See Nakash,* 882 F.2d at 1416; *CytRx*, 2015 WL 12745084, at *4.

Here, as detailed above, *see supra* Sections II.B., IV.A.3., both actions "arise from the same operative facts, name similar pertinent parties, and attempt to accomplish the same goal—namely, holding [Live Nation's] officers and directors accountable for alleged compliance deficiencies and failure to fulfill fiduciary duties." *See City of Hollywood Firefighters'*, 2024 WL 2868149, at *5. "In such situations, courts have routinely deemed the state and federal actions at issue sufficiently parallel." *Id.* (collecting cases); *CytRx*, 2015 WL 12745084, at *4-5 (holding that federal and state actions were "substantially similar" where they were "based on allegations of the same underlying misconduct"). Both actions also "contemplate[] the same remedies on behalf of the corporation." *Id.* at *5; *see supra* Section IV.A.3.

And, again, the fact that the California Derivative Actions include federal

claims does not change the calculus because those claims—alleged violations of Sections 10(b) and 14(a) of the Exchange Act—are "duplicative of the [*Schreiber*] plaintiffs' state law claims." *McCreary,* 2011 WL 1399263, at *4. Indeed, the Section 14(a) claim is premised on the alleged "issuance of materially false and misleading written statements to stockholders" in proxy statements from 2022-2024. *See CTPF* Complaint ¶¶ 340-43; *Iron Workers* Complaint ¶¶ 340-43; *Williams* Complaint ¶¶ 236-37. But the *Schreiber* plaintiffs' breach of fiduciary duty claims are also premised, in part, on allegedly false or misleading statements in *those very same proxy statements*. *See Schreiber* Complaint ¶¶ 214-23 (alleging that defendants "caused the Company to issue false and misleading proxy statements," including the "2022 Proxy," the "2023 Proxy," and the "2024 Proxy"). Similarly, both the Section 10(b) claim in the *Zwick* Action and the breach of fiduciary duty claims in the *Schreiber* Action challenge the same purported misstatements. *Compare e.g., Zwick* Complaint ¶ 10 *with Schreiber* Complaint ¶ 10. This renders the claims "sufficiently parallel," *CytRx*, 2015 WL 12745084, at *4, and is why "courts have found that abstention under *Colorado River* is appropriate." *See McCreary,* 2011 WL 1399263, at *4 (granting *Colorado River* stay where Exchange Act claim was duplicative of Delaware state law claim, and noting that "Delaware common law recognizes claims based on material omissions in proxies similar to the plaintiff's Exchange Act claims" (citation omitted)).

The substantial similarities between the California Derivative Actions and the *Schreiber* Action strongly weigh in favor of granting a stay.

### B. In the Alternative, the Court Should Exercise Its Inherent Power and Stay the California Derivative Actions Pending Resolution of the Parallel *Schreiber* Action

In addition to exercising its discretion under *Colorado River*, the Court should also stay the California Derivative Actions pursuant to its inherent authority under *Landis* because: (i) a stay is necessary to prevent harm to Live Nation, (ii) judicial

economy mandates a stay, particularly given the special concern of piecemeal litigation with respect to the California Derivative Actions, and (iii) there will be no possible damage from imposition of a stay. *See* 299 U.S. at 254-55; *CMAX*, 300 F.2d at 268 (articulating application of the *Landis* stay factors in the Ninth Circuit). Courts regularly exercise their inherent authority under *Landis* to stay derivative actions in deference to parallel litigation. *See, e.g., Bao v. Page*, 2020 WL 1671556, at *2 (N.D. Cal. Feb. 5, 2020) (staying federal derivative actions in favor of state-court derivative actions); *see also In re RH S'holder Deriv. Litig.*, 2019 WL 580668, at *5 (N.D. Cal. Jan. 23, 2019) (staying derivative action pending resolution of parallel securities action).

1. **A Stay Is Necessary to Prevent Harm to Live Nation**

Ordinarily, courts considering whether to grant a stay balance the respective interests of adverse parties, but derivative litigation requires a different analysis. Unlike a typical civil plaintiff, the plaintiff in a derivative action is not acting on his or her own behalf, but rather is acting as the company's "fiduciary," with a corresponding "duty of loyalty to the company." *See Breault v. Folino*, 2002 WL 31974381, at *1 (C.D. Cal. Mar. 15, 2002). In other words, because the plaintiff purports to proceed on behalf of the company, the relevant question is what is "in the company's best interest." *Id.* Here, it is undoubtedly in Live Nation's interest to stay the California Derivative Actions pending resolution of the parallel *Schreiber* Action.

As noted above, *see supra* Sections II.B., IV.A.3., the claims in the California Derivative Actions are entirely parallel to claims pending in the *Schreiber* Action. Proceeding with these cases while the *Schreiber* Action is pending would (1) risk inconsistent rulings on key issues—including the threshold issue of whether any of these plaintiffs are entitled to pursue claims on behalf of Live Nation, and (2) result in "duplicative expenditure of the company's resources." *See Bao*, 2020 WL 1671556, at *2. Courts routinely cite one or both of these harms in staying

duplicative derivative actions.[5]

2. **Judicial Economy Mandates a Stay**

A stay of the California Derivative Actions will also considerably aid the orderly course of justice by avoiding unnecessary, piecemeal litigation. As detailed above, *see supra* Sections II.B., IV.A.3., these actions are identical to the *Schreiber* Action in all material respects, and resolution of key issues in *Schreiber,* including whether plaintiffs have adequately alleged demand futility under Delaware law, will necessarily bear on the viability of plaintiffs' derivative claims. These are precisely the instances where courts exercise their inherent authority to stay litigation to avoid waste of judicial resources. *See, e.g.*, *Bao*, 2020 WL 1671556, at *2 (staying case where state court derivative action would "resolve the threshold legal issue presented [(demand futility)]" to "preserve the Court's and [the company's] resources"); *Lloyd v. Carney*, 2011 WL 11799981, at *1 (D.N.J. Aug. 5, 2011) (staying derivative action, noting "[i]t is abundantly clear that considerations of judicial economy weigh heavily in favor of granting the temporary stay"); *Weiss*, 178 F. Supp. at 570 (plaintiffs "have no right to engage the Court or their adversaries in wasteful activities when another forum is available where claimed grievances may be fully and fairly heard and a disposition made upon the merits"). The factor applies with

[5] *See, e.g.*, *Klein v. Cook*, 2015 WL 2454056, at *4 (N.D. Cal. May 22, 2015) (staying action in favor of earlier-filed state derivative case due to the "potential prejudice to Defendants that could result from conflicting rulings" on demand futility); *Sabbag v. Cinnamon*, 2010 WL 8470477, at *8 (N.D. Cal. Dec. 10, 2010) ("Proceeding with two separate derivative actions, each seeking to remedy the same wrongs, serves only to injure the corporation and its shareholders by forcing the corporation to incur duplicative litigation expenses."); *Weiss v. Doyle*, 178 F. Supp. 566, 570 (S.D.N.Y. 1959) ("[t]he interests of the corporation whose rights the various plaintiffs seek to vindicate [] require that this action should be stayed" in favor of the state-court derivative action); *In re RH*, 2019 WL 580668, at *4 (staying derivative action in favor of parallel securities action as being in the "best interest" of the company); *Rosenblum v. Sharer*, 2008 WL 9396534, at *8 (C.D. Cal. July 28, 2008) (staying derivative action in favor of proceeding that shared the "same core factual allegations" to prevent "substantial harm" to the company).

special force in overlapping derivative cases because it is fundamentally a "board's authority to control a corporate litigation asset" and the question is whether this is the rare case where individual shareholders may "usurp" that authority. *See In re Transunion Deriv. S'holder Litig.*, 324 A.3d 869, 882 (Del. Ch. 2024). There is no efficiency rationale that could justify asking two courts to simultaneously consider this same threshold issue in overlapping cases.

3. **<u>There Is No "Possible Damage" From a Stay</u>**

The third and final *Landis* factor permits the Court to consider the "possible damage" that might occur from the imposition of a stay. As discussed above, in derivative litigation, the plaintiff shareholder has no "interest" that is relevant to the stay analysis—instead, the suit can proceed only if and when it is in the Company's best interest. Here, a stay will prevent damage to Live Nation—not cause it. *See supra* Section IV.B.1.; *see also Bao*, 2020 WL 1671556, at *2; *Klein*, 2015 WL 2454056, at *4-5. Plaintiffs, on the other hand, will suffer no harm from a stay. The allegations in the California Derivative Actions are already being tested because they are "identical [to] those alleged" in the *Schreiber* Action. *Klein*, 2015 WL 2454056, at *4. This is particularly true given that the plaintiffs in the *Schreiber* Action seek the same relief on behalf of the Company. *See supra* Section IV.A.3; *Klein*, 2015 WL 2454056, at *4; *see also Sabbag*, 2010 WL 8470477, at *7 (plaintiff suffered "no prejudice" from stay of federal derivative action in favor of state derivative action where the state-court plaintiff sought similar relief). If anything, by insisting that the Company litigate duplicative lawsuits, the plaintiffs in the California Derivative Actions raise substantial doubt about whether they are acting for the benefit of the Company and all shareholders or whether this is an effort by their lawyers "to gain control of (or a role in) the litigation," which serves "the interests of the law firm, rather than those of the corporation on whose behalf [plaintiffs] ostensibly seek[] to litigate." *See South v. Baker*, 62 A.3d 1, 24 (Del. Ch. 2012).

## V. CONCLUSION

For the foregoing reasons, Live Nation respectfully requests that the Court stay the California Derivative Actions pending resolution of the parallel *Schreiber* Action.

Dated: September 4, 2026 Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Melanie M. Blunschi*
Melanie Blunschi (CA Bar No. 234264)
Morgan E. Whitworth (CA Bar No. 304907)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
*melanie.blunschi@lw.com*

Jason C. Hegt (*pro hac vice forthcoming)*
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
*jason.hegt@lw.com*

Jordan D. Cook (CA Bar No. 293394)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: +1.714.540.1235
Facsimile: +1.714.755.8290
*jordan.cook@lw.com*

*Attorneys for Defendants and Nominal Defendant Live Nation Entertainment, Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants and Nominal Defendant Live Nation Entertainment, Inc., certify that this brief contains 6,264 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 4, 2026

/s/ *Melanie M. Blunschi*
Melanie M. Blunschi